UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Zhiquan LIU,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>Jeremy CASEY, et al.,<br><br>　　　　　　　　　Respondents. | Case No.: 26cv720-LL-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1] |

Before the Court is Petitioner Zhiquan Liu's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [ECF No. 1 ("Pet.")]. Also before the Court are Respondents' Return in Opposition to the Habeas Petition [ ECF No. 5 ("Ret.")] and Petitioner's Traverse [ECF No. 6 "Traverse"]. For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus and **ORDERS** Petitioner's immediate release from custody.

**I.     BACKGROUND**

Petitioner Zhiquan Liu is a 61-year-old native and citizen of the People's Republic of China. Pet. ¶ 15; ECF No. 5-2, Declaration of Ann I. Ferrari ("Ferrari Decl.") ¶ 5. On or about May 25, 1993, Petitioner entered the United States without inspection. Pet. ¶ 16; Ferrari Decl. ¶ 7. U.S. Department of Homeland Security ("DHS") placed Petitioner in

removal proceedings via a Notice to Appear dated August 12, 2002. *Id*. ¶ 8. On January 9, 2007, an immigration judge ordered Petitioner be removed to China, and Petitioner's appeal to the Board of Immigration Appeals was dismissed on March 26, 2008. Pet. ¶ 17; Ferrari Decl. ¶ 9. Thus, Petitioner's order of removal became administratively final on March 26, 2008. Ferrari Decl. ¶ 9. On April 15, 2010, ICE officers detained Petitioner and released him on the same day on order of supervision. Pet. ¶ 18; Ferrari Decl. ¶ 11. Petitioner attended his ICE check-in every year until he was detained at his check-in on July 29, 2025. Pet. ¶¶ 19, 22; Ferrari Decl. ¶ 12. Petitioner was not served with a notice of revocation of release or given an informal interview. Ferrari Decl. ¶ 12. Following his detention, Petitioner cooperated with ICE in its efforts to remove him by providing his fingerprints, signing documents presented to him, taking photographs, and submitting his expired Chinese passport to ICE. Pet. ¶¶ 23, 25.

On October 26, 2025, Petitioner was transferred from Montgomery Processing Center in Texas to Imperial Regional Detention Facility in California. Pet. ¶¶ 26, 30. About a month later, Petitioner asked about the status of his removal, and ICE told him that the Chinese government had refused to accept him on September 27, 2025 and that it would continue trying. Pet. ¶ 28. Since then, Petitioner has not received any further updates and remains detained without any bond hearing. Pet. ¶ 29. On October 15, 2025, Respondents forwarded a written request for identity and nationality verification to National Immigration Administration ("NIA") at the United States Embassy in Beijing. Ferrari Decl. ¶ 15. Once NIA confirms Petitioner's identity and Chinese nationality, Respondents will then submit a written request for issuance of a travel document to the NIA. *Id*. ¶ 17. Additionally, Respondents claim that during the fiscal year 2025, China accepted 2,138 Chinese nationals for removals from United States. *Id*. ¶ 18.

Petitioner argues that his prolonged detention without a bond hearing is unlawful because it violates 8 U.S.C. § 1231(a)(6), the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act, and *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. ¶¶ 31–46. Petitioner also argues that DHS did not serve him with a written notice or an

informal interview pursuant to its regulations 8 C.F.R. § 241.4 and § 241.13. *Id*. ¶¶ 47–52. Petitioner seeks a writ of habeas corpus directing Respondents to, *inter alia*, release him from custody or alternatively, order a bond hearing. *Id.* at 12.

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order.").

## III.  DISCUSSION

Petitioner argues that (1) ICE failed to comply with its own regulations before re-detaining Petitioner, violating 8 C.F.R. § 241.4 and § 241.13; (2) his detention violates *Zadvydas* and 8 U.S.C. § 1231. Pet. ¶¶ 31–57. Respondents respond that (1) any alleged failure to follow regulations does not violate due process; (2) ICE re-detained Petitioner to execute his removal order to China and that it is working diligently to obtain Petitioner's

travel document. Ret. 2–4. The Court finds that both of Petitioner's claims are meritorious and each one independently justifies Petitioner's release.

### A. Agency Regulations

Petitioner challenges his detention as unlawful because ICE failed to provide the required notice and opportunity to be heard before re-detaining him, in violation of the Fifth Amendment and 8 C.F.R. § 241.4 and § 241.13. Pet. ¶¶ 47–52. The Court agrees.

The detention and release of noncitizens that are subject to a final order of removal are governed by 8 U.S.C. § 1231. This statute provides that "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). However, once that time passes and "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released on supervised release. *Zadvydas*, 533 U.S. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the [noncitizen] does not leave or is not removed within the 90-day removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Once ICE releases a noncitizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (citation omitted). Code of Federal Regulations sections 241.4 and 241.13 govern the release and the revocation of such release of noncitizens who are subject to a final removal order. *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025). If ICE chooses to re-detain a noncitizen after they have been released, the noncitizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4 (l)(1); 8 C.F.R. § 241.13(i)(3). Thereafter, the noncitizen may "submit any evidence or information that [] [he] believes shows there is no significant likelihood [he may] be

removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

Here, Respondents do not appear to suggest that Petitioner violated the terms of his supervised release [*see generally* Ret.], ruling out § 241.4(l)(1) or § 241.13(i)(1) as the source of his revocation. Rather they appear to rely on either § 241.4(l)(2) or § 241.13(i)(2). According to Respondents, "ICE re-detained Petitioner to execute his removal order to China." Ret. at 3. In other words, Respondents decided to revoke Petitioner's release because it was "appropriate to enforce a removal order." 8 C.F.R. § 241.4(l)(2)(iii). Accordingly, § 241.4(l)(2)(iii) applies here.

However, ICE still failed to provide notice and informal interview before detaining Petitioner, thereby violating his due process rights. The requirements for notice and an initial informal interview are not explicitly required in § 241.4(l)(2), but courts have held that the same requirements constrain revocation of release under this provision as well. *See Diaz*, 2025 WL 2581575, at *5 (citing various district court cases that have rejected the government's arguments that these provisions do not apply to § 241.4(l)(2)); *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) ("District courts have consistently . . . held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2)"; collecting cases). Here, Respondents concede ICE did not serve Petitioner a notice of revocation of release when ICE re-detained Petitioner on July 29, 2025. Ret. at 2. Even if it had served a notice of revocation of release, courts have found them to be insufficient to provide notice under the statute. *See, e.g., Sargsyan v. Noem*, No. 25-CV-3857 JLS (JLB), 2026 WL 92044, at *3 (S.D. Cal. Jan. 13, 2026) (finding a generic form revocation letter insufficient to provide notice); *Xayakesone v. Noem*, No. 25-CV-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official [noncitizen] file and a determination that there are changed circumstances in your case"); *Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27,

2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the [noncitizen's] release"); *Nouri*, 2025 U.S. Dist. LEXIS 171809 at *14 ("Petitioner cannot be expected to 'respond to the reasons for revocation stated in the notification' when the [n]otice does not actually state any reasons for revocation.") (citation omitted). The Court finds that Respondents failed to provide Petitioner a written notice as required by 8 C.F.R. § 241.4 (l) and 8 C.F.R. § 241. 13.

Further, after re-detaining a noncitizen who is out on supervision, ICE must "promptly" conduct "an initial informal interview" to "afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i)(3). Here, Respondents again concede that ICE did not conduct an initial informal interview at the time of re-detention. Ret. at 2. As other courts have found, ICE's failure to provide an informal interview after the revocation of release constitutes a due process violation. *See Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *6 (S.D. Cal. Oct. 10, 2025) (due process violation where "[n]othing in the record indicates that Petitioner was provided with an interview in connection with the revocation of his release or otherwise afforded an opportunity to respond to the reasons for his re-detention."); *Ceesay*, 781 F. Supp. 3d at 164 ("ICE's failure to afford [petitioner] an interview violated his right to due process"); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (holding that informal interview was not sufficiently "prompt" where it took place twenty-seven days after revocation and collecting cases); Order Granting Habeas Corpus Petition, *Sayvongsa v. Noem*, No.: 3:25-cv-02867-AGS-DEB (S.D. Cal. Oct. 31, 2025), ECF No. 10 (granting petition where petitioner did not receive an informal interview for twenty-one days after being re-detained). The Court finds that Respondents failed to provide Petitioner an informal interview as required by 8 C.F.R. § 241.4(l) and 8 C.F.R.§ 241.13(i).

Respondents argue that even assuming ICE violated agency regulations, "any alleged failure to follow regulations does not violate due process." Ret. at 4. "[T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due

process rights, and (2) [] those that do not." *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). "A violation of the first type of regulation, however, implicates due process concerns even without a prejudice inquiry. *Id*. (holding that where "the regulation violation … constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation"). "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview … derives from the fundamental constitutional guarantee of due process." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. 2025). Accordingly, Respondents' violation "implicates due process concerns even without a prejudice inquiry." *Raya-Vaca*, 771 F.3d at 1205.

Even if that were not the case, Petitioner suffered sufficient prejudice. In the immigration context, "violation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the [noncitizen]," *i.e.*, the violation "prejudiced interests of the [noncitizen] which were protected by the regulation." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979). ICE's failure to comply with the requirements of § 241.4 and § 241.13 "prejudiced interests of [Petitioner] which were protected by the regulation[s]." *Id*. Both § 241.4 and § 241.13 were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). ICE deprived Petitioner of these due process protections when it failed to provide him with a prompt interview to respond to the reasons for revocation of his release. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that

"[u]nlawful detention" by immigration officials constituted "irreparable harm"). Therefore, Petitioner was prejudiced by ICE's failure to comply with its own regulations.

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)). Petitioner had a protected liberty interest in remaining out of custody, and thus, ICE was required to follow its regulations before re-detaining the Petitioner. "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).

In sum, the Court finds that because ICE did not follow its own regulations when it re-detained Petitioner, these failures constitute a violation of Petitioner's due process rights and justifies his release from unlawful detention. *See, e.g.*, *Tran*, 2025 WL 3005347, at *3–4 (granting a habeas petition where ICE failed to follow § 241.13(i)(3) procedures); *Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-CV-2111-JES-DEB, 2025 WL 2988356 (S.D. Cal. Oct. 23, 2025) (granting a habeas petition where ICE failed to follow § 241.4(l) procedures).

**B.** *Zadvydas*

When a noncitizen has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for 90 days pending the government's efforts to secure their removal. *See* 8 U.S.C. § 1231(a)(1)(A). This 90-day period is referred to as the "removal period." *Id*. After the removal period, this statute "limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States" and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

future." *Id.* If the petitioner satisfies their initial burden, then the burden shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the noncitizen's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

In Petitioner's case, Petitioner's removal order became administratively final on March 26, 2008. Ferrari Decl. ¶ 9. It has been well over six months since Petitioner was detained on July 29, 2025. Pet. ¶ 22; Ferrari Decl. ¶ 12. Thus, the Court finds Petitioner's current detention is no longer "presumptively reasonable."

The Petitioner now has the initial burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up). However, Petitioner must offer more than "conclusory statements suggesting that he will not" be removed. *Andrade v. Gonzalez*, 459 F.3d 538, 543 (5th Cir. 2006); *Quassani v. Killian*, Case No. 2:17-cv-01678-APG-PAL, 2017 WL 3396506, at *2 (D. Nev. Aug. 4, 2017) ("question[ing] whether petitioner can meet his initial burden" given that he "has offered nothing more than conclusory statements with respect to the likelihood of his removal in the foreseeable future").

Here, Petitioner has met his burden. Petitioner notes that his removal is not foreseeable "due to the lack of travel documents and the fifteen-year history on supervision." Traverse at 3–4. Despite this, he has "provided fingerprints," "signed documents presented to him," took photographs, "submitted his expired Chinese passport to ICE" to cooperate with Respondents' efforts to remove him. Pet. ¶¶ 23, 25. Moreover, Petitioner claims that ICE told him that the Chinese government had refused to accept him

on September 27, 2025. *Id*. ¶ 28. Respondents do not dispute this and fail to address this at all. Accordingly, Petitioner meets the initial burden of demonstrating that removal is not significantly likely in the reasonably foreseeable future.

      The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents argue that they have been "diligent in seeking to obtain a travel document" from the Chinese government and China accepted 2,138 Chinese nationals in 2025. Ferrari Decl. ¶ 18. However, without the total number of Chinese nationals with final orders of removals pending, this figure does not demonstrate whether Petitioner's removal is reasonably foreseeable. *See Dipraseuth v. Noem*, No. 25-CV-3471 JLS (BJW), 2025 WL 3677674, at *3 (S.D. Cal. Dec. 18, 2025) (rejecting similar argument that "ICE had been routinely obtaining travel documents for Laotian citizens and effectuating removal flights to Laos" because there is "'no evidence regarding the percentage of successful requests to'" a particular country, and "the fact that others have been removed to a country alone cannot constitute changed circumstances in an individual Petitioner's case"). Moreover, Respondents have not submitted a request for travel document yet because they have not received a response regarding their request for identity and national verification from the United States Embassy in Beijing, which they filed over four months ago on October 15, 2025. *Id*. ¶ 15. In fact, "general indications that U.S. agencies have been in discussions with target country regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Lopez-Cacerez v. McAleenan*, No. 19-CV-1952-AJB-AGS, 2020 WL 3058096, at *6 (S.D. Cal. June 9, 2020) (quoting *Zhao v. Kelly*, No. CV 17-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017)). Respondents have not provided any "specific information regarding how or when they expect to obtain the necessary documentation or cooperation" from the Chinese government. *Mohamed v. Ashcroft*, No. C01-1747P, 2002 WL 32620339, at *1 (W.D. Wash. Apr. 15, 2002) (finding that a letter dated three months prior stating that meetings between [respondents] and the Ethiopian Embassy "appear to have resulted" in an agreement to issue travel documents

was insufficient to meet respondents' burden and granting relief); *see also Souvannaseng v. Noem*, No. 3:25-CV-3473-CAB-DEB, 2025 WL 3641180, at *2 (S.D. Cal. Dec. 16, 2025) (a "vague assertion that 'ICE has worked diligently to effectuate Petitioner's removal to Laos. These removal efforts remain ongoing'" and that "they removed 177 Laotian nationals in fiscal year 2025, up from 0 Laotian nationals in fiscal year 2024" was not sufficient to show there is a significant likelihood of removal in the reasonably foreseeable future"); *Islam v. Kane*, No. CV-11-515-PHX-PGR, 2011 WL 4374226, at *4 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* No. CV-11-0515-PHX-PGR, 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Repeated statements from the Bangladesh Consulate that the travel document request is pending does not provide any insight as to when, or if, that request will be fulfilled."). Therefore, "an unsubstantiated possibility" that the Chinese government will eventually approve Petitioner's travel document request "does not satisfy Respondent's burden." *Lawrikow v. Kollus*, No. CV081403PHXGMSLOA, 2009 WL 2905549, at *13 (D. Ariz. July 27, 2009); *Andreasyan v. Gonzales*, 446 F. Supp. 2d 1186, 1189 (W.D. Wash. 2006) (finding that the petitioner's case was "still under review and pending a decision" from the Uzbekistani Consular did not meet respondents' burden); *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (ICE did not meet its burden where it "merely assert[ed] that it has followed up on its request for travel documents" but could not provide any "substantive indication regarding how or when it expect[ed] to obtain the necessary travel document from the Indian government.") Thus, Respondents have not shown there is a significant likelihood that Petitioner will be removed to China in the reasonably foreseeable future. Therefore, Petitioner's continued detention is no longer authorized by statute or under *Zadvydas*.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1]. Respondents are **ORDERED** to immediately release Petitioner from custody subject only to the conditions of his preexisting Order of Supervision. As this concludes the litigation in this case, the Clerk of Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: February 20, 2026

_____
Honorable Linda Lopez
United States District Judge